UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JERMAINE DEMETRIUS MILES, # 233110,<br><br>Plaintiff,<br><br>vs<br><br>CAPTAIN DELOACH, DHO SHIRLEY SINGLETON, OFFICER LINDA JONES, and IGC KEN LONG,<br><br>Defendants. | C/A No.  4:07-CV-2188-TLW-TER<br><br><br><br>**REPORT AND RECOMMENDATION** |

**I.   INTRODUCTION**

Plaintiff, who is proceeding pro se, is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Although not explicitly stated in his Complaint, Plaintiff presumably brings this action pursuant to 42 U.S.C. § 1983 for violations in connection with his May 20, 2007, charge for Sexual Misconduct and his subsequent disciplinary hearing and grievances on that charge. Presently before the Court is Defendants' Motion for Summary Judgment (Document # 37). Because Plaintiff is proceeding pro se, the undersigned issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

**II.     FACTS**

On May 19, 2007, Plaintiff and Officer Jones had a verbal altercation on the Recreational field and several inmates laughed at what Plaintiff was saying to Officer Jones. Plaintiff Affidavit (Document # 40). On May 20, 2007, Officer Jones was working in the Colleton Unit, B Wing when she heard water flowing in the janitor's closet. Jones Affidavit at ¶ 5. When she looked in the direction of the door she observed the Plaintiff through the crack of the door engaged in active masturbation while looking at her. Id. at ¶ 5. She directed the Plaintiff to stop this behavior, retrieve his ID and report back to her and she recommended that a charge of 822 – Sexual Misconduct be lodged against the Plaintiff. Id. at ¶ 6. Officer Jones then reported the event to the Sergeant on duty, Mattie Edwards, who agreed with the recommendation. Jones Aff. at ¶ 7; Edwards Aff. at § 2. Plaintiff asserts that Officer Jones falsely accused him of sexual misconduct in retaliation for his comments the day before.

Consistent with policy, the recommendation was forwarded to Captain Joseph W. DeLoach, the B-2 Shift Captain. Captain DeLoach reviewed the report filed by Officer Jones and spoke with employees and Inmate Miles and determined that Officer Jones' recommendation to charge Inmate Miles with Sexual Misconduct was appropriate. DeLoach Aff. at ¶ 2. Inmate Miles was placed in the Special Management Unit and referred for a disciplinary hearing. Id.

On May 31, 1997, Ms. Singleton conducted the disciplinary hearing on the sexual misconduct charge against Inmate Miles. The inmate was represented by counsel and an audio recording of the proceedings was made. After hearing the testimony of Officer Jones Ms. Singleton found Inmate Miles guilty of the charge. Plaintiff asserts that Officer Jones lied during the hearing and that Singleton made up her mind that Plaintiff was guilty of the charge before she heard all the evidence.

She leveled the following sanctions against him: reprimand, loss of canteen and telephone privileges for 180 days, disciplinary detention for 180 days, loss of 90 days good time, suspension of contact visitation for 365 days and 365 days in a pink jumpsuit. Singleton Aff. at ¶ 3. Ms. Singleton's decision was based upon the seriousness of the offense and Inmate Miles' extensive disciplinary history, which contains numerous convictions on the same charges. Id. at ¶ 4. Ms. Singleton notified Inmate Miles of his right to appeal. Long Aff. at ¶ 1.

Inmate Miles filed a grievance as a result of the charge by Officer Jones. As Step 1 of the grievance process Inmate Grievance Coordinator (IGC) Long reviewed the disciplinary hearing record and report along with the recorded transcripts and incident report. There was an overlap in the timing of his general complaint against the officer for discrimination and his hearing. His first grievance was filed on May 22, 2007, prior to the May 31, 2007, disciplinary hearing (first grievance). Plaintiff filed another grievance on May 31, 2007, following the disciplinary hearing (second grievance). At the time Inmate Miles' first grievance was investigated the disciplinary hearing had been conducted and the inmate had been convicted. IGC Long therefore reviewed and processed the first grievance as a Step 1 disciplinary appeal. Id. at ¶ 2-3.

IGC Long later personally served Inmate Miles with the Warden's response and provided him with a Step 2 (appeal) Form. He further informed the inmate that the Step 2 Form had to be completed and returned along with the Step 1 Form within five days in order to continue along the grievance and appeals process. The second grievance was returned to Plaintiff unprocessed with the explanation that he had already received the warden's response regarding the disciplinary hearing on the first grievance. After service of the Warden's response to the Step 1 Grievance Form, the inmate took issue with classification of this case as a Step 1 Appeal. This appeal was denied and

Inmate Miles was advised to complete the Step 2 Grievance Form. He was told to return both the Step 1 and the completed Step 2 form to IGC Long's office within five days. The inmate completed the Step 2 Form but failed to return it with the Step 1 Form. IGC Long went to the inmate's cell and advised him that he needed to complete another Step 2 Form and return it with the Step 1 Form in order for his appeal to be processed. At this point the inmate became belligerent, began yelling at IGC Long and told IGC Long he would see him in court. The inmate never followed the proper procedures or filed the required paperwork to go forward with his appeal and his grievance therefore was closed. Id. at ¶¶ 4-7.

Plaintiff asserts that his first grievance addressed separate issues than those raised at the disciplinary hearing and so the first grievance should not have been converted into a Step 1 disciplinary appeal. He asserts the issues raised in the first grievance have never actually been addressed.

Inmate Miles subsequently filed a grievance (the third grievance) against ICG Long alleging improprieties in his handling of the inmate's initial grievance. This grievance was investigated by Ann Hallman at Headquarters. Her response was reviewed by the Division Director of Operations and General Counsel and the charges were determined to be unfounded. Id. at ¶¶ 8-9. In August 2007 the inmate was transferred to Perry Correctional Institution. Id. at ¶ 10.

### III.    STANDARD OF REVIEW

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of

liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. <u>See</u> Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

**IV.    DISCUSSION**

It is not exactly clear what claims Plaintiff is making in this case.  In his Complaint, when asked "What are the issues you are attempting to litigate in the above-captioned case?", Plaintiff responded, "discrimination, conspiracy to conspire, cohersing, and unprofessionalism." Complaint at p. 2.  All of Plaintiff's claims arise out of the charge of sexual misconduct, the subsequent

disciplinary hearing on that charge, and the grievance process. Plaintiff asserts that the conviction on the sexual misconduct charge could result in him losing his prison job and could affect his parole eligibility and his placement in the Colleton unit of the prison.

### A.  Exhaustion of Administrative Remedies

Defendants also argue that Plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit.  The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002);  Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including

§1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

From the record, it appears that Plaintiff filed three grievances relating to the events about which Plaintiff complains in this action. On May 22, 2007, he filed Grievance # ACI-0639-07, alleging discrimination by Captain DeLoach in relation to the 822 charge for sexual misconduct. See Ex. 1-A to Complaint. This was the first grievance and the one that IGC Long reviewed and processed as a Step 1 Appeal from the disciplinary hearing because he reached it after the disciplinary hearing was held. IGC Long stated in his Affidavit that he delivered the response to the Step 1 Appeal to Plaintiff along with a Step 2 Appeal form and explained to Plaintiff that he needed to complete the Step 2 Appeal form and return it with the Step 1 Appeal form within five days. Plaintiff completed and returned the Step 2 Appeal form but did not attach the Step 1 Appeal form. IGC Long advised Plaintiff to complete another Step 2 Appeal form and attach the Step 1 Appeal form, but Plaintiff failed to do so.

On May 31, 2007, after his disciplinary hearing, Plaintiff filed Grievance # ACI-0657-07 and Grievance # ACI-0658-07, both alleging bias against DHO Singleton during the hearing. See Exs. 2-B and 3-C to Complaint. These grievances were returned unprocessed because Plaintiff received the warden's response on Grievance # ACI-0639-07 concerning the disciplinary hearing. Id.

IGC Long avers that Plaintiff filed a grievance against him for his handling of the grievance process and attaches to his Affidavit a letter written by Plaintiff to Ann Hallman, Inmate Grievance Administrator. See Ex. A to Long Affidavit. There is no date or grievance number on the letter. Id. There is a handwritten note from Ann Hallman at the end of the letter, dated June 21, 2007, in which she states that his previous grievances will not be processed further because of his failure to timely file an appeal. Id. There is nothing in the record to indicate that Plaintiff took any steps to

appeal this Grievance.

In his Response, Plaintiff attaches Appeal documents to show that he went through "all necessary procedures of exhausting my available remedies." See Attachment 2 to Plaintiff's Response. The attachments include Plaintiff's letter to the Attorney General, Henry McMaster, regarding his 822 charge of Sexual Misconduct, Respondent SCDC's Brief in Support of Motion to Dismiss, filed with the Administrative Law Court (ALC) on October 26, 2007, and a letter to Plaintiff from the Administrative Law Court (ALC) providing information regarding his case filed with the ALC. Id. The Respondent's Brief does not address the merits of the claim or reference the Grievance Number from which the appeal was taken. Id. However, the letter to Plaintiff from the ALC references Grievance Number PCI-722-O7, which is not one of the Grievances at issue in this case. Id. Thus, this evidence submitted by Plaintiff is insufficient to show that he has exhausted his administrative remedies. Accordingly, it is recommend that summary judgment be granted for failure to exhaust administrative remedies.

In the alternative, it is recommended that summary judgment be granted on the merits of Plaintiff's claims.

### B.     Due Process in Disciplinary Hearings

In administrative disciplinary hearings, prisoners are entitled to procedural safeguards if loss of good conduct time, or some other liberty interest, is at issue. First, Plaintiff has no liberty interest in his placement in the Colleton unit of the prison or in his job status. There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. See Olim v. Wakinekona, 461 U.S. 238, 244-48, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); and Lyons v. Clark, 694 F.Supp. 184,

186-87 (E.D.Va.1988) (collecting cases). South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. See, e.g., Keeler v. Pea, 782 F.Supp. 42, 43-44 (D.S.C.1992) (citing Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)).

Additionally, a plaintiff has no constitutional right to participate in prison programs, so his ineligibility for a prison work program is not a deprivation of constitutional magnitude. See Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009, 98 S.Ct. 1882, 56 L.Ed.2d 391 (1978) (custody classifications and work assignments are generally within the discretion of the prison administrator); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir.1980) ( "An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); Alley v. Angelone, 962 F.Supp. 827, 834 (E.D.Va.1997) (prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement which could be expected by most inmates).

However, Plaintiff does have a liberty interest in good time credits and parole eligibility. See Furtick v. South Carolina Dep't of Probation, Parole, and Pardon Services, 576 S.E.2d 146, 149 (2002); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935(1974). In Wolff, the United States Supreme Court addressed the due process rights of federal prisoners during disciplinary proceedings. The Supreme Court enumerated the following five procedural safeguards which are required in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary

hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact-finder as to the evidence relied upon and the rationale behind the disciplinary tribunal's conclusion. Wolff, 418 U.S. at 563-66.

Plaintiff appears to argue that he was not afforded the opportunity to appear before an impartial panel by arguing that the hearing officer, Singleton, acted unprofessionally during the hearing and that Singleton had her mind made up about his guilt before he was given the opportunity to be heard. However, Plaintiff has failed to present any evidence to support his claims other than his subjective opinion. Plaintiff may not rely on beliefs, conjecture, speculation, or conclusory allegations to create a genuine issue of material fact. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).

Furthermore, a decision in disciplinary proceedings to revoke good conduct time or any other liberty interest passes scrutiny under the Due Process Clause if there is "some evidence" in the record to support the conclusions. Superintendent v. Hill, 472 U.S. 445, 454 (1985). In Hill, the Supreme Court noted,

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56; Baker v. Lyles, 904 F.2d 925, 933 (4th Cir.1990). The record reveals that there was "some evidence" to support the conclusion of guilt of sexual misconduct and the resulting sanctions imposed.

### C.     Equal Protection

Plaintiff also asserts a claim of discrimination, which he presumably brings under the Equal Protection Clause. To invoke the Equal Protection Clause, Plaintiff must show that he was similarly situated to other inmates. See Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1987). The Equal Protection Clause essentially mandates "that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); see Cook v. Babbitt, 819 F.Supp. 1, 9 (D.D.C.1993). Plaintiff fails to set forth any specific allegations of discrimination and he certainly has not presented any evidence that similarly situated inmates were treated differently. The undersigned concludes from the record that Plaintiff has failed to set forth an equal protection claim. Mere conclusory allegations of discrimination are insufficient to state a claim. Chapman v. Reynolds, 378 F.Supp. 1137, 1139 (W.D.Va.1974).

### D.     Grievance Procedure

Plaintiff also makes allegations regarding the grievance procedure. Plaintiff appears to allege that his grievances were not handled properly. It is recommended that these allegations be dismissed as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

### E.     Qualified Immunity

Defendants assert that they are entitled to qualified immunity in their individual capacities. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden

of proving entitlement to immunity rests with the defendant asserting it. The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261 (citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990)). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. Plaintiff fails to demonstrate a violation of his clearly established rights. Also, the undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Id. Therefore, Defendants are entitled to qualified immunity on Plaintiff's claims for monetary damages.

### F.    Eleventh Amendment Immunity

Defendants contend that Plaintiff's §1983 claims for monetary damages against Defendants in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits

unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC and, thus, state officials acting in their official capacity while employed by the SCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages for claims brought against them in their official capacities.

## V.     CONCLUSION

For the reasons set forth above, it is recommended that Defendants' Motion for Summary Judgment (Document # 37) be granted and this case dismissed.

                Respectfully submitted,

                Thomas E. Rogers, III
                Thomas E. Rogers, III
                United States Magistrate Judge

February 2, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**